IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| MARY A. FOULKE and JACK YOUNG, JR., as personal representatives for the Estate of John C. Young, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SHERIFF DAVID MORGAN, in his official capacity as Sheriff of Escambia County; JACOB HOLLOWAY; DANIEL WELLER; LUKE McCRACKEN; JOSHUA LAVOIE; and JAMES BARNES in their individual capacities. | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**COMPLAINT**

Plaintiffs Mary A. Foulke and Jack Young, Jr., as personal representatives of the Estate of John C. Young, by and through the undersigned attorney, hereby file this Complaint against the above-named Defendants, and alleges as follows:

## I.  Introduction

John C. Young was shot at least 27 times and killed by the Escambia County Sheriff's Office ("ECSO") on December 1, 2018. Mr. Young was a 65-year-old African American man, who weighed approximately 143 pounds and was 5'7" tall. In the early morning of December 1, 2018, Mr. Young called 911 because he was having a mental health crisis. Mr. Young called 911 for help. He was passed to two different 911 dispatchers during which he repeated his suicidal and homicidal statements. In response to the welfare check, eight ECSO officers arrived at Mr. Young's home shortly before 4:00 am. Within minutes of arrival, four ECSO officers decimated and riddled Mr. Young's body with at least 27 bullets from 9 mm handguns and an assault rifle. Mr. Young was shot and killed just outside the threshold of his apartment unit by four ECSO officers who were standing a few feet away from him. We have no video to show the true events that happened on December 1, 2018. We have eight (8) ECSO officers who were present and Mr. Young's bullet-ridden body. We contend, as set forth below, the ECSO officers were not justified in killing Mr. Young, it was not objectively reasonable for them to have acted in the way that they did, and that their use of excessive deadly force was unconstitutional.

## II. Jurisdiction and Venue

1.      This is an action for damages and attorney fees arising under 42

U.S.C. §§ 1983 and 1988 and damages arising under the laws of the State of

Florida.

2.      This Court has original jurisdiction over this action and the parties

pursuant to 28 U.S.C. §§ 1331 and 1343 and the U.S. Constitution.

3.      This court has supplemental jurisdiction pursuant to 29 U.S.C. § 1367

for all state claims.

4.      State law claims are brought under the provisions of the Florida

Statute §768.16 of the Florida Wrongful Death Act and Florida Statute

§ 768.28. Such claims arise from a common nucleus of operative facts with

violation(s) of 42 U.S.C. § 1983 as set forth herein.

5.      Plaintiffs Mary A. Foulke and Jack Young, Jr., personal

representatives of the Estate of John C. Young, have duly complied with the

notice requirements of § 768.28 Florida Statutes and the time to respond to

the notice has expired without the claim having been honored.

6.      All other conditions precedent to this lawsuit have been satisfied or

waived.

7.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1)

because one or more Defendants are situated within this venue, and under

28 U.S.C. § 1391(b)(2) because all or substantial part of the wrongful acts complained of occurred within this venue and within the Northern District of Florida.

### III.  Parties

8.        John C. Young is deceased as a result of Defendants' actions described below. At the time of his death, he was a resident of Florida and living alone at the Alabaster Garden Apartments in Pensacola, Florida.

9.        Plaintiff Mary A. Foulke is Mr. Young's sister and a citizen and resident of the state of New York. She is the co-administrator and representative of the Estate of John C. Young.

10.        Plaintiff Jack Young, Jr. is Mr. Young's brother and a citizen and resident of the state of Washington. He is the co-administrator and representative of the Estate of John C. Young.

11.        Mr. Young had a mental illness and as such was a qualified individual with a disability pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., ("ADA") including the Rehabilitation Act, 29 U.S.C. § 701 et. seq. ("Rehab. Act").

12.        At all times material hereto, Defendant David Morgan, (hereinafter "Morgan") in his individual and official capacity as Sheriff of the Escambia County Sheriff's Office operated and maintained the Escambia County

4

Sheriff's Office (hereinafter "ECSO") in Escambia County, Florida, and was a "person" subject to legal action under 42 U.S.C. § 1983. He is sued in his official capacity.

13.     At all times material hereto, Defendant Jacob Holloway, (hereinafter "Holloway"), was an ECSO Sergeant, a "person" under 42 U.S.C. § 1983, and a supervisor acting within the course and scope of his employment. He is sued in his individual capacity.

14.     At all times material hereto, Defendant Daniel Weller, (hereinafter "Weller"), was an ECSO Deputy, a "person" under 42 U.S.C. § 1983, and acting within the course and scope of his employment. He is sued in his individual capacity.

15.     At all times material hereto, Defendant Luke McCracken, (hereinafter "McCracken"), was an ECSO Deputy, a "person" under 42 U.S.C. § 1983, and acting within the course and scope of his employment. He is sued in his individual capacity.

16.     At all times material hereto, Defendant Joshua Lavoie, (hereinafter "Lavoie"), was an ECSO Deputy, a "person" under 42 U.S.C. § 1983, and acting within the course and scope of his employment. He is sued in his individual capacity.

17.     At all times material hereto, Defendant James Barnes (hereinafter "Barnes"), was an ECSO Lieutenant, a "person" under 42 U.S.C. § 1983, and acting within the course and scope of his employment. He is sued in his individual capacity.

18.     All Defendants were acting under color of law within the course and scope of their employment. At the time of John C. Young's death, the Defendants were acting jointly according to a common plan and purpose.

## IV.  Factual Allegations

19.     John C. Young was born on March 2, 1953. He died on December 1, 2018. He was a 65-year old African American man. He was 5'7" tall and weighed 143 lbs.

20.     Mr. Young was born and raised in Pensacola, Florida. He was the eighth of twelve children and his parents were Jack and Alice Young.

21.     Throughout his life, Mr. Young was referred to as JC or Brother John. He was educated in the Escambia County schools system and graduated from Woodham High School in 1972.

22.     At all times material hereto, Mr. Young lived at 929 Massachusetts Avenue, Apartment #1214 at the Alabaster Gardens Apartments in Pensacola, Florida.

23.     Mr. Young's apartment is located in a breezeway off of a long hallway of other apartment units.

24.     The breezeway is approximately 12-15 feet long.

25.     Mr. Young's unit is located near a set of staircases and no other units are located on his hallway/breezeway.

26.     Mr. Young loved fishing, checkers and reading. For many years, Mr. Young suffered from depression and schizophrenia. In 2018, shortly after Mr. Young's father and two siblings--Johnnie and Dorothy Jean, passed away, Mr. Young's depression and mental health issues escalated.

27.     At approximately 3:49 a.m. on December 1, 2018, Mr. Young called 911 for help.

28.     In a flat affect, Mr. Young stated to the 911 dispatcher that he had just killed someone and that he was thinking about killing himself too.

29.     At approximately 3:51, Mr. Young was placed on hold and then the 911 dispatcher transferred him to the Sheriff's department.

30.     Once 911 dispatch for the Sheriff's department answered, Mr. Young was required to repeat the purpose of his call.

31.     The 911 Sheriff's dispatcher asked Mr. Young if he had killed someone in the past or the whether it had "just happened."

32.     The 911 Sheriff's dispatcher asked Mr. Young if he knew the person that he had allegedly killed and Mr. Young responded that he did not.

33.     Mr. Young also indicated that he was suicidal. When asked what weapon he used, Mr. Young stated that he used a meat cleaver.

34.     Mr. Young also said that he had a gun and that he wanted to kill himself and others.

35.     In response to questions from the dispatcher, Mr. Young stated that he did not know who the person was that he had killed; that he was a black male; and that he was in his bedroom.

36.     At approximately 3:55 a.m., Mr. Young stated to the 911 dispatcher that the "police" had arrived and ended the call.

37.     A total of eight ECSO officers, including two Sergeants and a Lieutenant arrived at Mr. Young's apartment to conduct a welfare check.

38.     Within minutes of the ECSO officers' arrival at Mr. Young's apartment for a welfare check, Mr. Young was shot 27 times and killed by Defendants Holloway, Weller, McCracken, and Lavoie.

39.     Defendants used a barrage of weapons and firearms against Mr. Young, allegedly including multiple high powered bean bag shots; tasers; two (2) shots from an AR-15 rifle; and at least 25 shots from 9mm handguns.

40.     According to the Florida Department of Law Enforcement's ("FDLE") Investigative Report of the Use of Deadly Force against Mr. Young and the allegations contained therein:

**Defendant Holloway**

a.  Upon arrival to the apartment complex, Defendant Holloway allegedly attempted to call Mr. Young's cell phone but was unable to contact Mr. Young and received an automated "cellular customer is not available" type message.

b.  Reportedly, the unavailable cell phone number was the same number from which Mr. Young called 911 a few minutes earlier.

c.  Upon arrival at Mr. Young's apartment, Defendant Holloway knocked on Mr. Young's door and Mr. Young answered the door.

d.  Mr. Young opened the door and was observed with a meat cleaver in his right hand next to his side.

e.  There was some exchange between Defendant Holloway and Mr. Young, including Mr. Young mumbling.

f.  Within minutes of his arrival, Defendant Holloway used his firearm against Mr. Young.

g. According to Defendant Holloway, he used his firearm against Mr. Young after Mr. Young was shot by multiple bean bags and a taser by Defendants Weller and McCracken, respectively.

h. At all relevant times, Defendant Holloway was within a few feet of Mr. Young.

**Defendant Weller**

i. Defendant Weller heard Defendant Holloway encouraging Mr. Young to come outside to talk to them.

j. Defendant Weller observed Mr. Young with the meat cleaver at chest level and commanded Mr. Young to "drop it or I'll shoot you."

k. When Mr. Young did not "comply" with Defendant Holloway's and/or Defendant Weller's verbal commands, Defendant Weller used multiple bean bag rounds against Mr. Young.

l. Defendant Weller was within a few feet away from Mr. Young when he deployed multiple bean bag shots from a high-powered 12-gauge shotgun against Mr. Young.

m. According to Defendant Weller, Mr. Young did not respond at all to the bean bag shots and "didn't wince in pain" and "remained standing and holding on to the meat cleaver up at chest level."

n.  According to Defendant Weller, after multiple bean bags and taser were "ineffective" on Mr. Young he "attempted to transition to his taser."

o.  As Defendant Weller was transitioning, he observed Mr. Young "raise up his hand with the meat cleaver, now close to his face."

p.  Defendant Weller reached for his "pistol" and the meat cleaver was "in the air being thrown towards him" and the meat cleaver "hit his leg."

q.  Defendant Weller fell "slightly backwards" and discharged his pistol at Mr. Young from the ground.

r.  Defendant Weller stood back up as he "finished firing his pistol at Young."

s.  Several minutes after the shooting and away from the scene of the shooting, Defendant Weller reported that he "checked for injuries" when he went to his patrol vehicle.

t.  Defendant Weller checked for injuries on his leg between his thigh and knee.

u.   Defendant Weller reported that the "meat cleaver must have been stopped by his cell phone that was in his left pocket."

v. Defendant Weller reported this his cell phone case "had a cut approximately a few inches long on the back side of the case."

w. Defendant Weller reported that he "had a red mark on his leg in the area that was hit but not bleeding."

x. Defendant Weller reported that his pant leg had been cut where the cleaver allegedly struck his cell phone and leg.

**Defendant McCracken**

y. At or around the same time that multiple rounds of bean bags were deployed against Mr. Young, Defendant McCracken reported that he deployed a taser on Mr. Young.

z. Similar to the multiple bean bags, the taser reportedly had "no effect" on Mr. Young.

aa. Defendant McCracken was within a few feet away from Mr. Young when he used his taser against Mr. Young.

bb. According to Defendant McCracken, he transitioned from the "ineffective" taser to his firearm at the time that he "observed Young raise the meat cleaver over his head and throw the meat cleaver in the direction of the Deputies."

cc. According to Defendant McCracken, he also fired his firearm because he observed a knife in Mr. Young's left hand.

12

dd. Defendant McCracken was within a few feet of Mr. Young when he used his firearm against Mr. Young.

**Defendant Lavoie**

ee. According to Defendant Lavoie, after Mr. Young was shot by multiple "ineffective" bean bags and a taser, Mr. Young "raise[d] the meat cleaver up over his head" and he observed a box cutter in Mr. Young's left hand. At this moment, Defendant Lavoie discharged his ECSO issued Assault Rifle-15 approximately two times at Mr. Young.

ff. Defendant Lavoie was within a few feet of Mr. Young when he shot Mr. Young.

**Defendant Barnes**

gg. ECSO Lieutenant James Barnes was present during the incident described above. He was a few feet away from Mr. Young and the shooting ECSO officers. Lieutenant Barnes was the highest ranking ECSO officer on the scene. He was able to intervene, but did not intervene or prevent any of the other Defendants from shooting Mr. Young 27 times and killing him.

41.     Mr. Young was pronounced dead by Emergency Medical Services on the scene.

42.     Mr. Young's autopsy identified 27 separate gunshot wounds.

13

43.     Although Lieutenant Barnes was the highest ranking ECSO officer on the scene, Defendant Holloway made the command decisions for the welfare check to Mr. Young's apartment.

44.     Defendant Holloway reported that he has training and experience as a Crisis Intervention Officer ("CIT")

45.     Based on his training as a CIT and the call notes from dispatch, Defendant Holloway responded to Mr. Young's 911 call as a person "having a mental health crisis."

46.     None of the Defendants asked Mr. Young about the possibility of a murder victim in his apartment.

47.     911 dispatch and Defendants responded to Mr. Young's 911 call as a welfare check of a person having a mental health crisis.

48.     Defendants were within a few feet of Mr. Young during the entire encounter.

49.     Defendants reported that multiple high-powered bean bag rifle shots at Mr. Young's torso from a few feet away were simply "ineffective" and that he did not wince or move.

50.     Defendants reported that after the high-powered bean bag shots were ineffective, multiple tasers were deployed against Mr. Young and those were similarly "ineffective," and he did not move.

51.     Defendants reported that either because Mr. Young was not compliant to directives to show his hands and/or drop his weapon and/or because he raised his meat cleaver in a motion to throw it at the officers, multiple Defendants discharged their assault rifle or handguns at least 27 times against Mr. Young.

52.     Defendants allegedly shot Mr. Young at least 27 times because he failed to comply with directions to drop a meat cleaver.

53.     Defendants alternatively allegedly shot Mr. Young at least 27 times because multiple bean bag shots from a high-powered 12 gauge shot gun from a few feet away from Mr. Young were ineffective.

54.     Defendants alternatively allegedly shot Mr. Young at least 27 times because multiple taser discharges from a few feet away from Mr. Young were ineffective.

55.     Defendants alternatively allegedly shot Mr. Young at least 27 times because he raised a meat cleaver to throw at Defendants after he had been bean-bagged and tasered multiple times.

56.     None of Defendants' justifications, if believed, whether separate or in conjunction, justified using deadly force against Mr. Young 27 times.

57.     Defendants' use of deadly force against Mr. Young was not justified and violated his constitutional rights.

## V.  Claims and Causes of Action

### COUNT I
### Excessive Force, Civil Rights Violation Under 42 U.S.C. § 1983 against Defendant Morgan (Fourth Amendment to the U.S. Constitution)

58.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

59.     Defendant David Morgan is the Sheriff of Escambia County Sheriff's Office. Plaintiffs are entitled to relief against Sheriff Morgan, as Sheriff of Escambia County, because failed to act reasonably to prevent the use of unjustified and excessive force that led to Mr. Young's death.

60.     Defendant Morgan had a duty to adopt and implement rules and procedures to ensure that his officers were properly trained in crisis intervention when responding to citizens who are mentally ill or suffering from a mental health crisis or incident.

61.     Defendant Morgan had a duty to adopt and implement rules and procedures to ensure that his officers were properly trained to use a reasonable amount and degree of force during a welfare check of a citizen suffering from a mental health crisis. This duty includes, but is not limited to, the duty to create, adopt, and implement rules, regulations, practices and procedures which clearly direct officers as to the appropriate use of bean bag shotguns, tasers, handguns, and assault rifles.

16

62.     Defendant Morgan's failure to adopt and implement adequate policies regarding his officers' use of force, including, but not limited to the use of less lethal and firearms, resulted in the unnecessary and unjustified shooting a 5'7" 143 lb, 65-year old African American man at least 27 times, including one or more shots from an Assault Rifle from a distance of approximately five (5) feet away.

63.     Defendant Morgan had a duty to adopt and implement rules and procedures to ensure that his officers did not use unreasonably deadly force, and to screen, hire, supervise, train, discipline, and, if necessary, terminate officers who used excessive force, escalated the potential for excessive force and deadly force, and failed to intervene to protect others from constitutional abuses, though able.

64.     In September 2012, Defendant Morgan and the ECSO received a letter from the Department of Justice, Civil Rights Division, ("DOJ") that the DOJ had identified "systemic deficiencies relating to the way in which ECSO officers use force that, if left unaddressed, may result in civil rights violations."

65.     The DOJ's findings, among other things, included the following findings:

17

a.  Deficient policies and procedure related to use of force that lacked "accuracy, detail, and clarity."

b.  Inaccurate application of incorrect use of force standards. Specifically, the ECSO policies incorrectly referenced the "deputy's perception," rather than the Fourth Amendment's requirement that the necessity of force be "objectively reasonable."

c.  Deficient policies related to de-escalation and when not to use force. Notably, the DOJ's findings stated that ECSO's policies failed to address "de-escalation techniques appropriate to interactions with individuals who are under the influence of drugs or alcohol or who have mental illness." The DOJ went on to note that "[t]he policy should provide guidance on both how to identify such individuals, as well as how to properly interact with them."

d.  Incomplete and deficient use of force matrix, including use of non-force techniques, less-lethal force tools, and deadly force.

e.  Absence of policies and procedures related to its Electronic Control Weapons or more commonly known as tasers, including recommendations on when the taser may be used, against whom it should be used, and how it should be used.

f.  Absence of policies and procedures related to its impact weapons and munitions. The DOJ noted the absence of a policy that clearly identified which impact weapons and munitions ECSO officers may use, which are potentially lethal, and prohibition of their use absent justification for the use of deadly force. The DOJ findings go on to cite the following example, "rubber bullets should only be used when using deadly force is objectively reasonable."

g.  Throughout DOJ's findings letter, it is noted the ECSO's policies and procedures fail to provide clear guidance on when deadly force may be used and what constitutes deadly force.

h.  Deficient of use of force procedures that lead to underreporting of the use of force, incomplete or inaccurate accounts of the use of force, and the absence of accountability for the use of force.

i.  The DOJ findings noted that the ECSO had "glaring failures in supervising its deputies use of force," exhibited by the successful federal prosecution of an ECSO deputy for using excessive force with a taser on a woman who was not actively resisting. The same deputy had a history of misusing his taser and was nonetheless described as a "role model" in an evaluation. With respect to deficient supervision specifically, the DOJ findings noted the following deficiencies:

    i.   Absence of first line supervisors' investigation and reporting related to officers' use of force incidents;

    ii.   Absence of a comprehensive review of officers' conduct;

    iii.   Absence of an effective early warning system;

    iv.   Need for senior staff to "be more actively engaged in reviewing the actions of front-line personnel" to detect and minimize misconduct, and to identify training and policy issues.

66.    Notwithstanding these findings by the DOJ, Defendant Morgan, as the constitutional entity of Sheriff of Escambia County, failed to implement the DOJ's corrective actions.

67.    Defendant Morgan, as the constitutional entity of Sheriff of Escambia County, failed to provide necessary and clear policies, procedures, and training related to the interaction between ECSO officers and citizens with a need for crisis intervention or mental health assistance.

68.    Defendant Morgan, as the constitutional entity of Sheriff of Escambia County, failed to provide necessary and clear policies, procedures, and training related to the use of non-lethal, less-lethal, and lethal uses of force in order to avoid unnecessary use of deadly force by his officers and in such circumstances.

69.     Defendant Morgan has supervisory liability for the violation of Mr.

Young's Fourth Amendment rights under the United States Constitution.

70.     Defendant Morgan caused the constitutional violation and death of

Mr. Young by Defendants Holloway, Weller, McCracken, and Lavoie, as

follows:

    a.  Defendant Morgan failed to provide adequate policies, procedures, or

        training to ECSO officers in the use of force and the use of non-lethal,

        less-lethal, and firearms as a means of force, thereby creating a

        sheriff's office that accepted and ignored illegal and unconstitutional

        behavior with respect to use of force, in deliberate indifference and

        reckless disregard the health and welfare of persons who call ECSO

        for assistance and otherwise interact with ECSO officers.

    b.  Defendant Morgan failed to provide adequate policies, procedures, or

        training to ECSO officers regarding unreasonable uses of force that

        posed a risk of serious bodily injury or death including, but not

        limited to, the use of a firearms against a person exhibiting a mental

        health crisis.

    c.  Defendant Morgan failed to provide adequate policies, procedures, or

        training for monitoring and evaluating ECSO officers' use of deadly

        force, in deliberate indifference and reckless disregard to conducting

welfare checks and interactions with persons undergoing a mental health crisis or persons with mental illness.

   d.  Defendant Morgan had a custom and practice of allowing officers to use excessive and unreasonable force without fear of discipline, objective review, or consequence, thereby creating an office where such behavior is accepted;

71.     Defendant Morgan's actions, including failure to act, made the abuses and violations by Defendants Holloway, Weller, McCracken and Lavoie substantially certain to happen.

72.     Defendant Morgan's lack of policies, practices, and training caused Defendants Barnes to fail to intervene or prevent the shooting and death of Mr. Young

73.     Defendant Morgan's actions, including failure to act, was a proximate cause of Mr. Young's death and all the damages Plaintiffs sue upon.

74.     As a direct, proximate, and foreseeable result of Defendants' actions, Mr. Young suffered traumatic injuries, pain, and death.

**COUNT II**
**Excessive Force, Civil Rights Violations Under 42 U.S.C. § 1983 by Defendant Holloway (Fourth Amendment to the U.S. Constitution)**

75.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

76.     Plaintiffs are entitled to relief against Defendant Holloway for the

violation of John C. Young's Fourth Amendment right in that the

Defendants unnecessarily used deadly force against him acting individually

and jointly with other Defendants.

77.     The facts and circumstances show that Defendant Holloway's acts of

shooting and killing Mr. Young were not justified and not objectively

reasonable.

78.     Defendant Holloway deliberately and intentionally used his firearm

and/or in concert with other Defendants no less than 27 times to kill Mr.

Young.

79.     Defendant Holloway's intentional shooting of Mr. Young or in

concert with other Defendants no less than 27 times constituted deadly force

and created a substantial likelihood of death or serious bodily injury.

80.     "Failure to comply" with officers' commands is not a justification nor

objectively reasonable for using deadly force.

81.     Ineffectiveness of less-lethal weapons is not a justification nor

objectively reasonable for using deadly force.

82.     The reported sequence of events related to Mr. Young's possession of

a meat cleaver, if believed, is not a justification nor objectively reasonable

for using deadly force.

83.     Defendants used excessive and unjustified force against Mr. Young in

violation of his constitutional rights under 42 U.S.C. §1983 and the Fourth

Amendment to the U.S. Constitution.

84.     As a direct, proximate, and foreseeable result of Defendants' actions,

Mr. Young suffered traumatic injuries, pain, and death.

## COUNT III
**Excessive Force, Civil Rights Violations Under 42 U.S.C. § 1983 by
Defendant Weller (Fourth Amendment to the U.S. Constitution)**

85.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

86.     Plaintiffs are entitled to relief against Defendant Weller for the

violation of John C. Young's Fourth Amendment right in that the

Defendants unnecessarily used deadly force against him acting individually

and jointly with other Defendants.

87.     The facts and circumstances show that Defendant Weller's acts of

shooting and killing Mr. Young were not justified and not objectively

unreasonable.

88.     Defendant Weller deliberately and intentionally fired several high-

powered munitions (i.e., bean bags) against Mr. Young

89.     Defendant Weller deliberately and intentionally fired his firearm

and/or in concert with other Defendants no less than 27 times, killing Mr.

Young.

90.     Defendant Weller's intentional shooting of Mr. Young or in concert

with other Defendants no less than 27 times constituted deadly force and

created a substantial likelihood of death or serious bodily injury.

91.     "Failure to comply" with officers' commands is not a justification nor

objectively reasonable for using deadly force.

92.     Ineffectiveness of less-lethal weapons is not a justification nor

objectively reasonable for using deadly force.

93.     The reported sequence of events related to Mr. Young's possession of

a meat cleaver, if believed, is not a justification nor objectively reasonable

for using deadly force.

94.     Defendants used excessive and unjustified force against Mr. Young in

violation of his constitutional rights under 42 U.S.C. §1983 and the Fourth

Amendment to the U.S. Constitution.

95.     As a direct, proximate, and foreseeable result of Defendants' actions,

Mr. Young suffered traumatic injuries, pain, and death.

## COUNT IV
### Excessive Force, Civil Rights Violations Under 42 U.S.C. § 1983 by Defendant McCracken (Fourth Amendment to the U.S. Constitution)

96.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

97.     Plaintiffs are entitled to relief against Defendant McCracken for the

violation of John C. Young's Fourth Amendment right in that the

Defendants unnecessarily used deadly force against him acting individually and jointly with other Defendants.

98.     The facts and circumstances show that Defendant McCracken's acts of shooting and killing Mr. Young were unjustified and objectively unreasonable.

99.     Defendant McCracken deliberately and intentionally used his firearm and/or in concert with other Defendants no less than 27 times to kill Mr. Young.

100.     Defendant McCracken's intentional shooting of Mr. Young or in concert with other Defendants no less than 27 times constituted deadly force and created a substantial likelihood of death or serious bodily injury.

101.     "Failure to comply" with officers' commands is not a justification nor objectively reasonable for using deadly force.

102.     Ineffectiveness of less-lethal weapons is not a justification nor objectively reasonable for using deadly force.

103.     The reported sequence of events related to Mr. Young's possession of a meat cleaver, if believed, is not a justification nor objectively reasonable for using deadly force.

104.     Defendants used excessive and unjustified force against Mr. Young in

violation of his constitutional rights under 42 U.S.C. §1983 and the Fourth

Amendment to the U.S. Constitution.

105.     As a direct, proximate, and foreseeable result of Defendants' actions,

Mr. Young suffered traumatic injuries, pain, and death.

**COUNT V**
**Excessive Force, Civil Rights Violations Under 42 U.S.C. § 1983 by**
**Defendant Lavoie (Fourth Amendment to the U.S. Constitution)**

106.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

107.     Plaintiffs are entitled to relief against Defendant Lavoie for the

violation of John C. Young's Fourth Amendment right in that the

Defendants unnecessarily used deadly force against him acting individually

and jointly with other Defendants.

108.     The facts and circumstances show that Defendant Lavoie's acts of

shooting and killing Mr. Young were unjustified and objectively

unreasonable.

109.     Defendant Lavoie deliberately and intentionally used his assault rifle

and/or in concert with other Defendants no less than 27 times to kill Mr.

Young.

110.     Defendant Lavoie's intentional shooting of Mr. Young or in concert
with other Defendants no less than 27 times constituted deadly force and
created a substantial likelihood of death or serious bodily injury.

111.     "Failure to comply" with officers' commands is not a justification nor
objectively reasonable for using deadly force.

112.     Ineffectiveness of less-lethal weapons is not a justification nor
objectively reasonable for using deadly force.

113.     The reported sequence of events related to Mr. Young's possession of
a meat cleaver, if believed, is not a justification nor objectively reasonable
for using deadly force.

114.     Defendants used excessive and unjustified force against Mr. Young in
violation of his constitutional rights under 42 U.S.C. §1983 and the Fourth
Amendment to the U.S. Constitution.

115.     As a direct, proximate, and foreseeable result of Defendants' actions,
Mr. Young suffered traumatic injuries, pain, and death.

**COUNT VI**
**Failure to Intervene, Civil Rights Violation under**
**42 U.S.C. § 1983 by Defendants Barnes**

116.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

117.     Defendants Barnes was present at the incident outlined above on
December 1, 2018.

28

118.    Defendant Barnes was the highest-ranking officer on the scene. He

had a duty to intervene to prevent or stop the unconstitutional use of deadly

and excessive force against Mr. Young.

119.    Defendant Barnes was able to intervene to prevent or stop the

unconstitutional use of deadly and excessive force against Mr. Young.

120.    Defendants Barnes failed to intervene to prevent or stop the

unconstitutional use of deadly and excessive force against Mr. Young.

121.    Defendant Barnes' failure to intervene to prevent or stop the

unconstitutional shooting of Mr. Young was the direct and proximate cause

of Mr. Young's death.

## COUNT VII
### Violations of the Americans with Disabilities Act
### by Defendant Morgan

122.    Plaintiffs re-allege paragraphs 1 through 121 as if fully set forth

herein.

123.    Mr. Young was a qualified individual with a disability under the

ADA. Mr. Young's disability was mental illness, including a diagnosis of

schizophrenia

124.    Mr. Young called 911 on December 1, 2018 for help because he was

having suicidal and homicidal ideations.

125.     Regardless of whether Defendants were aware of his specific diagnosis, Defendants knew that Mr. Young was having a mental health crisis, including suicidal and homicidal statements and incoherent mumbling.

126.     Defendants believed that they were responding to a welfare check.

127.     Defendants believed that they were responding to an individual having a mental health crisis.

128.     During the initial encounter with Mr. Young, Defendants reportedly stated to Mr. Young, "it doesn't have to be this way."

129.     Once they made physical contact with Mr. Young, it was confirmed that Mr. Young was suicidal and having a mental crisis.

130.     A reasonable officer in Defendants' position would have known that Mr. Young was having a mental crisis, that his failure to comply with commands was consistent with a mental crisis, and that a reasonably accommodation should be made for his mental crisis without escalating the encounter to a deadly force situation.

131.     The ADA prohibits discrimination against persons with disabilities in the provision of governmental services such as law enforcement, and Defendants are agents, employees, ore representatives of a governmental entity that is required to comply with the ADA.

132.    At all times during his interaction with the ECSO, Mr. Young was

suffering from severe impairments including schizophrenia and suicidal

ideation. He was a qualified individual with a disability under the ADA.

133.    Defendants unduly escalated the interaction with Mr. Young and

failed to accommodate Mr. Young's mental health crisis, thereby causing

him to die.

134.    Defendants failed to engage in de-escalation techniques or otherwise

accommodate his disability. In fact, Defendants escalated and exacerbated

the situation by being confrontational and aggressive, including using bean

bags and tasers against him for his alleged non-compliance with Defendants'

instructions to drop a meat cleaver at his side.

135.    The failure to accommodate Mr. Young's disability was intentional

and deliberately indifferent to his rights under Title II of the ADA and was

the proximate cause of his death.

136.    One or more Defendants had received crisis intervention training and

were aware of their duty to make reasonable accommodation for Mr.

Young's disability and mental health crisis.

137.    By failing to make a reasonable accommodation for Mr. Young and

unduly escalating Mr. Young's obvious mental disability and mental health

crisis, Defendants' actions violated Title II of the ADA.

138.    Defendant Morgan failed to provide policies, procedures, or training to ECSO officers regarding their obligations under the ADA.

139.    As a result of Defendant Morgan's violations of Mr. Young's rights under the ADA, Mr. Young was killed.

## COUNT VIII
## Violations of Section 504 of the Rehabilitation Act
## By Defendant Morgan

140.    Plaintiffs re-allege paragraphs 1 through 139 as if fully set forth herein.

141.    As a recipient of federal funds, Defendant Morgan is required by Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) to make reasonable accommodations to persons with disabilities in their facilities, program activities and who receive ECSO services. It further requires such recipients to modify such facilities, service, and programs as necessary to accomplish this purpose. Accordingly, Defendants are subject to the mandate of Section 504.

142.    For the same reasons that Mr. Young was deemed to have a disability for purposes of the ADA, Mr. Young was also a qualified individual with a disability under Section 504.

143.     The same conduct of Defendants that constituted an ADA violation also constituted failure to reasonably accommodate Mr. Young's disability under Section 504.

144.     Defendants' above described failure to accommodate Mr. Young's disability was intentional and/or deliberately indifferent to his rights under Section 504, thereby constituting a violation of the Rehabilitation Act by a recipient of federal funds for which Defendant Morgan is liable in his official capacity.

**COUNT IX**
**Wrongful Death Under State Law against Defendant Morgan as Sheriff of the Escambia County Sheriff's Office**

145.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

146.     For purposes of this count, in the alternative, Plaintiffs are entitled to relief against Defendant Morgan under state law because he owed a duty to Mr. John Young and breached his duty to exercise reasonable care, pursuant to Section 768.16, *et seq.*, when undertaking his duties as Sheriff so as to not endanger the lives and safety of persons within any foreseeable zones of risk created by such activities, including Mr. John C. Young.

147.     Defendant Morgan was put on notice of the danger to Mr. Young or to other persons in like circumstances.

148.     Defendant Morgan had a non-delegable duty of care for Mr. Young.

149.    Defendant Morgan breached his duty of care in the following ways:

   a.  Failing to adequately provide policies, procedures, or training to his
       officers, including Defendants Holloway, Weller, McCracken, and
       Lavoie, in the use of force and the use of firearms, thereby creating an
       atmosphere of illegal and unconstitutional behavior with respect to the
       use of force, with negligent disregard to the health and welfare of
       persons confronted by ECSO officers;

   b.  Failing to adequately provide policies, procedures, or training to his
       officers, including Defendants Holloway, Weller, McCracken, and
       Lavoie, in the use of force applications which he knew that his
       officers needed and were using and which posed a serious risk of
       personal injury, including, but not limited to, the unnecessary and
       unreasonable use of firearms against citizens, including Mr. Young;

   c.  Failing to adequately monitor and evaluate the performance of his
       officers, including Defendants Holloway, Weller, McCracken, and
       Lavoie, including their use of force applications. In negligent
       disregard toward citizens, including Mr. Young;

   d.  Having a policy, custom, and practice of allowing his officers to use
       excessive and unreasonable force by allowing his police officers to

misuse firearms, in negligent disregard to the life and safety of

citizens, including Mr. Young; and

    e.  Having a policy, custom and practice of allowing officers to provoke

       and escalate conflict with persons undergoing a mental health crisis.

150.    Defendant Morgan had an obligation to make an appropriate

investigation of his agents and employees and failed to do so.

151.    Defendant Morgan had an obligation to properly screen, train,

supervise, control, discipline, and retain his employees.

152.    As a direct and proximate cause of the aforementioned acts of

Defendants, Mr. Young suffered great physical damage, suffering, and death

and is entitled to compensatory damages.

## COUNT X

### Wrongful Death Under State Law against Defendant Morgan as Sheriff of the Escambia County Sheriff's Office
### Respondeat Superior

153.    Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth

herein.

154.    For purposes of this count, in the alternative, Defendant Morgan as

Sheriff of Escambia County is vicariously liable for the acts of Defendants

Holloway, Weller, McCracken, and Lavoie acting within the course and

scope of their employment.

155.     For purposes of this count, Plaintiffs plead the acts of Defendants
Morgan, Holloway, Weller, McCracken, and Lavoie were intentional and
breached their duty of care to Mr. John C. Young.

156.     The acts of Defendants Morgan, Holloway, Weller, McCracken and
Lavoie constituted a harmful and/or offensive contact on the person of Mr.
Young beyond any privilege given to law enforcement officers.

157.     As a direct and proximate result of the wrongful acts and omissions
alleged above, Mr. Young was shot at least 27 times and killed by ECSO
officers.

## COUNT XI
## Wrongful Death Under State Law against Lieutenant Barnes

158.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

159.     For purposes of this count, Plaintiffs are entitled to relief against
Defendant Barnes in that as the highest ranking ECSO officer on the scene,
he failed to supervise and intervene to prevent the wrongful conduct that
resulted in Mr. John Young's death.

160.     Defendant Barnes had a duty to supervise, intervene, and prevent the
shooting death of Mr. John C. Young.

161.     Defendant Barnes was present on December 1, 2018.

162.     Defendant Barnes was within a few feet of ECSO officers' shooting of Mr. Young.

163.     Defendant Barnes failed to supervise, intervene, and prevent the shooting death of Mr. John C. Young.

164.     As a direct and proximate result of Defendants Barnes' failure to supervise ECSO officers on the scene of a welfare check, Mr. Young was needlessly shot and killed, causing extreme pain and suffering to Mr. Young.

## COUNT XII
### Wrongful Death Under State Law against Deputy Holloway

165.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

166.     For purposes of this count, Plaintiffs are entitled to relief against Defendant Holloway in that his wrongful conduct was intentional, willful and wanton.

167.     Defendant Holloway's actions of shooting Mr. John C. Young constituted a harmful and/or offensive touching on Mr. Young beyond any privilege given to the police and in violation of his duty of care.

168.     As a direct and proximate result of harmful and/or offensive touching, Mr. John C. Young was needlessly shot and killed, causing extreme pain and suffering to Mr. Young.

## COUNT XIII
## Wrongful Death Under State Law against Deputy Weller

169.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

170.     For purposes of this count, Plaintiffs are entitled to relief against

Defendant Weller in that his wrongful conduct was intentional, willful and

wanton.

171.     Defendant Weller's actions of shooting Mr. John C. Young

constituted a harmful and/or offensive touching on Mr. Young beyond any

privilege given to the police and in violation of his duty of care.

172.     As a direct and proximate result of harmful and/or offensive touching,

Mr. John C. Young was needlessly shot and killed, causing extreme pain and

suffering to Mr. Young.

## COUNT XIV
## Wrongful Death Under State Law against Deputy McCracken

173.     Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

174.     For purposes of this count, Plaintiffs are entitled to relief against

Defendant McCracken in that his wrongful conduct was intentional, willful

and wanton.

175.    Defendant McCracken's actions of shooting Mr. John C. Young constituted a harmful and/or offensive touching on Mr. Young beyond any privilege given to the police and in violation of his duty of care.

176.    As a direct and proximate result of harmful and/or offensive touching, Mr. John C. Young was needlessly shot and killed, causing extreme pain and suffering to Mr. Young.

## COUNT XV
## Wrongful Death Under State Law against Deputy Lavoie

177.    Plaintiffs re-allege paragraphs 1 through 57 as if fully set forth herein.

178.    For purposes of this count, Plaintiffs are entitled to relief against Defendant Lavoie in that his wrongful conduct was intentional, willful and wanton.

179.    Defendant Lavoie's actions of shooting Mr. John C. Young constituted a harmful and/or offensive touching on Mr. Young beyond any privilege given to the police and in violation of his duty of care.

180.    As a direct and proximate result of harmful and/or offensive touching, Mr. John C. Young was needlessly shot and killed, causing extreme pain and suffering to Mr. Young.

WHEREFORE, Plaintiffs demand judgment as follows:

A.    An amount to be determined at trial, including compensatory and

punitive damages, where applicable, plus interest;

B.    Injunctive relief;

C.    For plaintiffs' attorneys' fees pursuant to 42 U.S.C. §1988, 42 U.S.C.

§ 12205 and 29 U.S.C. § 794a(b);

C.    For the costs and disbursements incurred in this action; and

D.    Any other such relief as the Court may deem just and proper.

E.    Plaintiffs demand Trial by Jury.

Respectfully submitted,

__/s/ Je Yon Jung_____
JE YON JUNG, DC Bar No. 495154
LARUBY MAY, FL Bar No. 0044592
May Lightfoot, PLLC
3200 Martin Luther King Jr. Avenue, SE
3rd Floor
Washington, D.C. 20032
(202) 918-1824
(202) 918-1010 fax
jjung@maylightfootlaw.com
laruby@maylightfootlaw.com
Attorneys for Plaintiffs
*Pro hac vice*