**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**MARY A. FOULKE, and JACK YOUNG, JR., as personal representatives for the Estate of John C. Young,**

**Plaintiffs,**

**v.** **CASE NO. 3:20-cv-5506-MCR-EMT**

**SHERIFF DAVID MORGAN, in his official capacity as Sheriff of Escambia County; et al.,**

**Defendants.**
**____________________________________/**

**ORDER**

Before the Court is Defendants' Motion to Dismiss, ECF No. 13. On full consideration, the Court finds the motion is due to be granted.

## I. Legal Standard

The Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiffs. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff[s'] allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

**II. Background**

The facts, accepted as true and construed in the light most favorable to Plaintiffs, are as follow. This case arises from the fatal police shooting of John C. Young. Mr. Young was a 65-year-old man who suffered from severe mental impairments including depression, suicidal ideation, and schizophrenia. He was 5' 7" tall and weighed 143 pounds. He lived alone in an apartment in Pensacola Florida. Mr. Young's apartment is located in a twelve-to-fifteen-foot-long breezeway off of a long hallway of other apartment units. No other units are located on this breezeway.

At approximately 3:49 a.m. on December 1, 2018, Mr. Young called 911 for help. In a flat affect, Mr. Young stated to the 911 dispatcher that he had just killed someone and that he was thinking about killing himself too. After being transferred to an Escambia County Sheriff's Office ("ESCO") 911 dispatcher, Mr. Young stated that he did not know the person he had killed, that he had used a meat cleaver as a

weapon to kill the person, that he had a gun, and that he wanted to kill himself and others. Mr. Young further informed the dispatcher that he was a black male and that he was in his bedroom. At approximately 3:55 a.m., Mr. Young told the 911 dispatcher that the "police" had arrived and ended the call.

Eight ESCO officers, including Defendants Jacob Holloway, Daniel Weller, Luke McCracken, Joshua Lavoie, and James Barnes (collectively, the "Officer Defendants") arrived at Mr. Young's apartment to conduct a welfare check of a person having a mental health crisis. Within minutes of the Officer Defendants' arrival, Mr. Young lay dead just outside the threshold of his apartment after being shot twenty-seven times. Plaintiffs have neither video evidence nor testimony from third-party witnesses of what occurred between the Officer Defendants' arrival and Mr. Young's death. Consequently, only the Officer Defendants' version of events is available to Plaintiffs. That version of events is contained in the Florida Department of Law Enforcement's Investigative Report of the Use of Deadly Force against Mr. Young (the "FDLE Report"). The Complaint outlines the FDLE Report's factual allegations.

According to the FDLE Report, Holloway, trained as a Crisis Intervention Officer ("CIT"), made the command decisions for the welfare check to Mr. Young's apartment. Holloway first attempted to call Mr. Young's cell phone but was unable

to contact Mr. Young. Holloway then knocked on Mr. Young's door. When Mr. Young opened the door, he was holding a meat cleaver in his right hand next to his side. Holloway was within a few feet of Mr. Young.

Weller was also a few feet away from Mr. Young and heard Holloway encourage Mr. Young to come outside to talk to the police. Weller observed Mr. Young with the meat cleaver at chest level and commanded Mr. Young to "drop it or I'll shoot you." When Mr. Young did not comply with Weller or Holloway's verbal commands, Weller deployed multiple bean bag rounds from his shotgun at Mr. Young. According to Weller, Mr. Young did not respond to the bean bag rounds and remained standing and holding the meat cleaver at chest level.

McCracken was also within a few feet of Mr. Young. At or around the same time that Weller deployed the bean bag rounds, McCracken deployed a taser against Mr. Young. As with the bean bag rounds, the taser reportedly had no effect on Mr. Young.

After the ineffective use of the bean bag rounds and taser, McCracken and Lavoie observed either a box cutter or knife in Mr. Young's left hand. As Weller attempted to transition from his shotgun to his taser, Mr. Young raised the meat cleaver over his head and threw it, striking Weller in the left leg between his thigh

and knee.[1] Weller fell "slightly backwards" and discharged his pistol at Mr. Young from the ground. At this time, McCracken, Lavoie, and Holloway also used their firearms against Mr. Young. Weller stood back up as he "finished firing his pistol at [Mr.] Young."

Barnes was the highest-ranking ESCO officer on the scene. He was positioned a few feet away from Mr. Young and the other Officer Defendants. Barnes did not intervene or prevent the other Officer Defendants from shooting Mr. Young.

Mr. Young was shot twenty-seven times[2] and was pronounced dead on the scene by Emergency Medical Services.[3]

Plaintiffs, the personal representatives for Mr. Young's estate, bring claims against Defendant David Morgan in his official capacity as Sheriff of ESCO (the "Sheriff") and the Officer Defendants under 42 U.S.C. § 1983 for excessive force against the Sheriff (Count I), Holloway (Count II), Weller (Count III), McCracken (Count IV), and Lavoie (Count V), as well as a claim for failure to intervene against

---

[1] Fortunately, Weller was carrying a cell phone in his left pocket. The meat cleaver struck the cell phone instead of Weller's flesh, leaving a cut on his cell phone case but only a red mark on his leg.

[2] Mr. Young was struck by two rounds fired from Lavoie's AR-15 rifle and twenty-five rounds fired from Weller's, McCracken's, and Holloway's 9mm handguns.

[3] The Complaint does not allege whether Mr. Young had, in fact, murdered an individual with the meat cleaver.

Barnes (Count VI). Plaintiffs also raise claims under Title II of the Americans with Disabilities Act ("ADA") (Count VII) and Section 504 of the Rehabilitation Act ("RA") (Count VIII) against the Sheriff for the failure to accommodate Mr. Young's disability. Additionally, Plaintiffs raise state law claims for wrongful death against the Sheriff (Counts IX and X), Barnes (Count XI), Holloway (Count XII), Weller (Count XIII), McCracken (Count XIV), and Lavoie (Count XV). Defendants move to dismiss Plaintiffs' Complaint in its entirety based on qualified immunity, statutory immunity, and for failure to state a claim.

## III. Discussion

### A. § 1983 Claims (Counts I–VI)

"The right to be free from unreasonable search and seizure is secured by the Fourth Amendment and 'apprehension by the use of deadly force is a seizure.' " *Daugherty v. Hurst*, No. 1:17-cv-72, 2020 WL 5836554, at *5 (S.D. Ala. Sept. 30, 2020) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).[4] Plaintiffs allege that Holloway, Weller, McCracken, and Lavoie used excessive and unjustified force against Mr. Young, that Barnes failed to intervene to prevent the unconstitutional use of force, and that the Sheriff was deliberately indifferent to the ESCO's systemic

[4] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Michigan v. Summers*, 452 U.S. 692, 694 n.2 (1981).

deficiencies regarding its officers' uses of force that resulted in Mr. Young's death. The Officer Defendants argue they are entitled to qualified immunity because the use of deadly force was objectively reasonable under the circumstances or, alternatively, because their conduct was not unlawful under clearly established law. Additionally, Barnes and the Sheriff argue that, absent an underlying use of excessive force, Plaintiffs' § 1983 claims against them fail. In response, Plaintiffs argue they have sufficiently alleged violations of Mr. Young's clearly established constitutional right to be free from excessive force and that Plaintiffs should have the opportunity to conduct discovery to dispute the Officer Defendants' "self-serving" version of events contained in the FDLE Report. Plaintiffs further argue they have sufficiently alleged causal connections between the Sheriff and the violation of Mr. Young's constitutional rights.

Based on the facts alleged in the Complaint, the Court finds the Officer Defendants are entitled to qualified immunity. The defense of qualified immunity "entitles [the Officer Defendants] to avoid liability for discretionary acts they undertook in their individual capacity so long as 'their conduct [did not] violate[] clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mann v. Joseph*, 805 F. App'x 779, 782–83 (11th Cir. 2020) (quoting *Shaw v. City of Selma*, 884 F.3d 1093, 1099 (11th Cir. 2018)). Because

Plaintiffs do not dispute that the Officer Defendants were acting within their discretionary authority during the incident in question, the Officer Defendants enjoy qualified immunity unless Plaintiffs allege facts that establish the Officer Defendants' actions "violated a right protected by the Constitution and that the alleged constitutional right was clearly established at the time of the incident." *Id.* at 783 (internal citation omitted). To avoid dismissal, Plaintiffs must also "establish that [their] claims are facially plausible—that is, that [they] pleaded sufficient factual matter for [the Court] to draw a reasonable inference that the [Officer Defendants] were liable for the alleged misconduct that [Plaintiffs'] alleged they committed." *Id.*

"The standard for whether the use of force was excessive under the Fourth Amendment is one of 'objective reasonableness.' " *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 386 (1989)). "An officer may only use deadly force against a person whom the officer reasonably perceives as posing an imminent threat of serious physical harm to the officer or others." *Gregory v. Miami-Dade Cty., Fla.*, 719 F. App'x 859, 866 (11th Cir. 2017) (citing *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005) and *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003)). In examining whether the Officer Defendants' use of deadly force was reasonable, the Court recognizes that "police officers are often forced to make split-second judgments—

in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Long*, 508 F.3d at 580 (quoting *Graham*, 490 U.S. at 397). Consequently, the Court is "loath to second-guess the decisions made by police officers in the field." *Id.* (quoting *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003)).

Plaintiffs allege (1) that Mr. Young was armed with a meat cleaver and standing a few feet from the Officer Defendants, (2) that he failed to comply with the Officer Defendants' verbal commands to drop the meat cleaver, (3) that he was unaffected by less-lethal force, (3) that he threw the meat cleaver at Weller with enough force to cut Weller's pant leg and his cell phone case, and (4) that he remained armed with a knife or box cutter after throwing the meat cleaver. Based on these allegations, the Officer Defendants' use of deadly force was objectively reasonable and did not violate Mr. Young's Fourth Amendment rights. *See Shaw v. City of Selma*, 884 F.3d 1093, 1099 n.5 (11th Cir. 2018) ("If a reasonable officer could have believed that under the circumstances Shaw posed a threat of inflicting serious injury or death on him, the shooting was objectively reasonable regardless of whether Shaw had already committed a crime or was resisting or attempting to evade arrest."); *Penley v. Eslinger*, 605 F.3d 843, 851 (11th Cir. 2010) (finding that the decedent's "refus[al] to comply with repeated commands to drop his weapon . . .

support[ed] the conclusion that use of deadly force was reasonable); *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1261–62 (10th Cir. 2008) (on summary judgment, affirming grant of qualified immunity to an officer who used deadly force against an agitated, suicidal man holding a large knife when the distance between the man and the officer was between seven and twenty feet).

Plaintiffs nonetheless argue that they have sufficiently alleged a violation of Mr. Young's Fourth Amendment rights because they "dispute Defendants' self-serving version of the facts" and "characterizations of Mr. Young's movements, threats and actions" as outlined in the FDLE Report and they believe that "[a]llowing Defendants to prevail on their version of the facts at this stage of proceedings would be tantamount to granting Defendants summary judgment without providing the Plaintiffs an opportunity for discovery to dispute Defendants' version of events." ECF No. 14 at 5, 11, 15–16. The Court disagrees. First, "the 'driving force behind creation of qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery.' " *Corbitt v. Vickers*, 929 F.3d 1304, 1309 n.2 (11th Cir. 2019) (citation omitted). Plaintiffs' argument is unavailing because they do not allege or otherwise identify any competing or contradictory facts that would undermine the FDLE Report's version of events as recounted in the Complaint. *Compare Harbert Int'l, Inc. v. James*, 157

F.3d 1271, 1280–81 (11th Cir. 1998) (affirming denial of a plaintiff's Rule 56[d][5] motion in a qualified immunity case because the specific facts the plaintiff claimed would be revealed by further discovery were unlikely to "establish either that defendants acted outside the scope of their discretionary authority or that they had violated clearly established law"), *with Estate of Todashev by Shibly v. United States*, 815 F. App'x 446, 454–55 (11th Cir. 2020) (reversing denial of a plaintiff's Rule 56(d) motion in a qualified immunity case where the plaintiff "made it clear that, based on the information that he has been able to obtain thus far, he believes that [the decedent] was more likely fleeing the apartment, instead of charging towards the officers, and that [the decedent] was shot in the back while attempting to escape"); *see also Mighty v. Miami-Dade Cty.*, 659 F. App'x 969, 972–73 (11th Cir. 2016) (affirming denial of motion to dismiss in a qualified immunity case where the plaintiff alleged that officers fatally shot an unarmed man in the back as he attempted to retreat into his parents' home because the allegations plausibly raised inference that the decedent "did not pose an immediate threat of serious harm when he was shot"). Plaintiffs have failed to sufficiently allege a violation of Mr. Young's

[5] *Harbert* was decided under former Rule 56(f). Current Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56, Advisory Committee notes to the 2010 amendments.

constitutional rights and the Officer Defendants are therefore "entitl[ed] not to stand trial or face the other burdens of litigation." *See Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (citation omitted).

Additionally, the only "fact" or "characterization" Plaintiffs seem to dispute is whether Mr. Young threw the meat cleaver at Weller *after* being tased and struck with multiple bean-bag rounds. *See* ECF No. 14 at 11. Critically, however, Plaintiffs do not dispute that Mr. Young—at some point—threw the meat cleaver at Weller with enough accuracy and force to strike Weller and cut his pant leg and cell phone case after ignoring the Officer Defendants' repeated commands to drop the weapon. The Complaint's factual allegations therefore undercut Plaintiffs' argument that the Officer Defendants' use of deadly force was not objectively reasonable. And to the extent Plaintiffs dispute other, unspecified "facts" or "characterizations" in the FDLE Report, "the mere possibility that [the Officer Defendants] acted unlawfully is insufficient to survive a motion to dismiss." *See Mighty*, 659 F. App'x at 972.

Finally, because the Complaint fails to sufficiently allege that Holloway, Weller, McCracken, and Lavoie used excessive force against Mr. Young, Plaintiffs' § 1983 claims against Barnes and the Sheriff also fail. *See Knight ex rel. Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional

violation.”); *Sanchez v. Hialeah Police Dep’t*, 357 F. App’x 229, 230 (11th Cir. 2009) (“[T]here is no derivative liability for failing to intervene when the officer accused of excessive force is entitled to qualified immunity.”).

Accordingly, Defendants’ motion to dismiss Plaintiffs’ § 1983 claims is granted.

B. ADA & RA Claims (Counts VII–VIII)

“Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities.” *Owens v. Sec’y, Fla. Dep’t of Corr.*, 602 F. App’x 475, 477 (11th Cir. 2015).[6] Title II applies to police conduct during the arrest of a disabled person. *See Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1085 (11th Cir. 2007). Plaintiffs raise claims for violations of the ADA and RA against the Sheriff, alleging the Officer Defendants failed to engage in de-escalation techniques or otherwise accommodate Mr. Young’s disability and instead unduly escalated his mental health disability and mental health crisis, proximately causing his death. Defendants argue that Plaintiffs’

[6] “The standard for determining liability under the Rehabilitation Act is the same as the standard under the ADA.” *Owens*, 602 F. App’x at 477 (citation omitted); *see Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133–34 (11th Cir. 2019) (“[W]hatever we have said—or say now—about Title II goes for § 504, and vice versa.”). Accordingly, as relevant to the instant motion, the standards under the RA and ADA are the same. For ease of reference, this order refers only to the ADA, without mentioning the identical standard under the RA.

claims fail because the Complaint fails to allege that (1) Mr. Young was "disabled" under the ADA, (2) the Officer Defendants "actually knew" Mr. Young was disabled, (3) the Officer Defendants could reasonably accommodate Mr. Young's disability under the "exigent circumstances" outlined in the FDLE Report, and (3) the Sheriff engaged in intentional discrimination against Mr. Young.

The Court finds that Plaintiffs' ADA and RA claims fail as a matter of law because the allegations show that exigent circumstances made accommodation of Mr. Young's disability unreasonable.[7] *See Bircoll*, 480 F.3d at 1085 ("[T]he question is whether, given criminal activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety."). Plaintiffs argue that Holloway's crisis intervention services and training or other "specialized help" were not made available to Mr. Young. But, as alleged in the Complaint, Holloway and the other Officer Defendants had no opportunity to engage in de-escalation techniques or otherwise accommodate Mr. Young's disability because the situation quickly escalated after Mr. Young opened the door holding a

[7] The Court assumes, without deciding, that Plaintiffs have sufficiently alleged that Mr. Young had a disability for purposes of the ADA.

meat cleaver.[8] Once Mr. Young disregarded the Officer Defendants' verbal commands, proved impervious to less-lethal force, and raised the meat cleaver in close proximity to the Officer Defendants, the immediate danger posed to the Officer Defendants' safety curtailed any duty to further accommodate Mr. Young's disability. *See Vila v. Miami-Dade Cty.*, 65 F. Supp. 3d 1371, 1384 (S.D. Fla. 2014) (granting motion to dismiss ADA claims based on denial of accommodation in the course of an arrest where the mentally-ill arrestee "became increasingly agitated and erratic" and waiting for specially-trained backup "would have been both impractical and dangerous"); *cf. Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018) (finding further accommodation of the decedent's disability was possible where the officers "had the time and opportunity to assess the situation and potentially employ . . . de-escalation, communication, or specialized help").

Defendants' motion to dismiss Plaintiffs' ADA and RA claims is therefore granted.

[8] Based on the Plaintiffs' allegations, it appears Holloway initially attempted to accommodate Mr. Young's disability by trying to call Mr. Young and then encouraging him to come outside of his apartment to talk with the Officer Defendants.

C. Wrongful Death Claims (Counts IX–XV)

Plaintiffs' remaining claims for wrongful death all arise under Florida law. The parties are not diverse. *See* Compl. ¶¶ 8, 12.[9] Therefore, the only basis for the Court's exercise of jurisdiction over Plaintiffs' claims is supplemental jurisdiction under 28 U.S.C. § 1367. "A district court may decline to exercise supplemental jurisdiction over a claim after dismissing all claims over which it has original jurisdiction." *Cromartie v. Ala. State Univ.*, 693 F. App'x 852, 853 (11th Cir. 2017) (per curiam). "In fact, [the Eleventh Circuit] 'encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.' " *Id.* (quoting *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004)). The Court finds that the factors of economy, convenience, fairness and comity each weigh in favor of a remand. *See Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 775–77 (11th Cir. 2016) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, this action is remanded to the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.

[9] "Where an estate is a party, as in this case, the citizenship that counts for diversity purposes is that of the decedent." *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 (11th Cir. 2010).

Accordingly,

1. Counts I–VIII of Plaintiffs' Complaint are **DISMISSED without prejudice**.
2. The Court declines to exercise supplemental jurisdiction over the state law causes of action in Counts IX–XV. This action is therefore **REMANDED** to the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.
3. The Clerk is directed to remand this action and close this case for all purposes.

**DONE AND ORDERED** this 19th day of November 2020.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**