UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARY A. FOULKE and
JACK YOUNG, JR. as
personal representatives for
the Estate of John C. Young,

      Plaintiffs,

v.                                                  CASE NO.: 3:20-cv-05506-MCR-EMT

David Morgan, in his official
capacity as Sheriff of Escambia
County Florida, et al.

      Defendants.

---

## DEFENDANTS' SHERIFF MORGAN, HOLLOWAY, WELLER, MCCRACKEN, LAVOIE AND BARNES, MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendant Sheriff Morgan, in his official capacity as Sheriff of Escambia County Florida, (hereinafter referred to as "Sheriff") and Defendants Holloway, Weller, McCracken, Lavoie, and Barnes, in their individual capacities, pursuant to the Federal Rules of Civil Procedure 12(b)(6), and in the manner required by the United States District Court for the Northern District of Florida Local Rules 7.1, move to dismiss Plaintiffs' Amended Complaint [ECF No. 24] for failure to state a claim upon which relief can be granted. In support thereof,

the Sheriff, Holloway, Weller, McCracken, Lavoie, and Barnes state the following:

1.    On June 1, 2020, Plaintiffs Foulke and Young, as personal representatives of the Estate of John C. Young (hereinafter, "Plaintiffs"), filed a Complaint. [ECF No. 1]

2.    On July 14, 2020, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. [ECF No. 13]

3.    On November 19, 2020, an Order was issued granting Defendants' Motion to Dismiss, without prejudice as to the federal claims, and remanding the state claims to Circuit Court. [ECF No. 20]

4.    On December 15, 2020, Plaintiffs filed an Amended Complaint [ECF No. 24], which alleges the following causes of action:

- Count I:  Excessive Force, Civil Rights Violation Under 42 U.S.C. §1983 by Sheriff (Fourth Amendment to the U.S. Constitution)

- Count II: Conspiracy to Fabricate Evidence in violation of 42 U.S.C. §1983 by all Defendants

- Count III: Excessive Force, Civil Rights Violation Under 42 U.S.C. §1983 by Defendant Holloway (Fourth Amendment to the U.S. Constitution)

- Count IV:  Excessive Force, Civil Rights Violation Under 42 U.S.C. §1983 by Defendant Weller (Fourth Amendment to the U.S. Constitution)

- Count V:  Excessive Force, Civil Rights Violation Under 42 U.S.C. §1983 by Defendant McCracken (Fourth Amendment to the U.S. Constitution)

- Count VI:  Excessive Force, Civil Rights Violation Under 42 U.S.C. §1983 by Defendant Lavoie (Fourth Amendment to the U.S. Constitution)

- Count VII:  Failure to Intervene, Civil Rights Violation Under 42 U.S.C. §1983 by Defendant Barnes

- Count VIII: Violations of the Americans with Disabilities Act by Defendant Sheriff

- Count IX: Violations of Section 504 of the Rehabilitation Act by Defendant Sheriff

- Count X: Wrongful Death Under State Law against Sheriff.

- Count XI: Wrongful Death Under State Law against Sheriff. *Respondeat Superior*

- Count XII: Wrongful Death Under State Law against Lieutenant Barnes

- Count XIII: Wrongful Death Under State Law against Deputy Holloway

- Count XIV: Wrongful Death Under State Law against Deputy Weller

- Count XV: Wrongful Death Under State Law against Deputy McCracken

- Count XVI: Wrongful Death Under State Law against Deputy Lavoie

5.     As to any and all claims asserted against the individually named Defendants pursuant to 42 U.S.C. Section 1983, the Plaintiff's Amended Complaint fails to state a basis for the alleged violation of then-existing clearly established law.

6.     As to any and all claims asserted against the individually named Defendants pursuant to 42 U.S.C. Section 1983, these Defendants are immune from liability based upon the doctrine of qualified immunity.

7.     As to any and all claims asserted against the individually named Defendants pursuant to 42 U.S.C. Section 1983, the Plaintiff's Amended Complaint fails to state a cause of action based upon excessive force used by these Defendants against the decedent.

8.     In addition, the Plaintiff's Amended Complaint fails to state a cause of action against Defendant Barnes for failure to intervene by Defendant Barnes.

9.     As to any and all claims asserted against all Defendants, the Plaintiff's Amended Complaint fails to state a cause of action based upon an alleged conspiracy to fabricate evidence in violation 42 U.S.C. Section 1983.

Furthermore, any conspiracy claim is barred by the intracorporate conspiracy doctrine.

10.    As to any and all claims asserted against the Sheriff, pursuant to 42 U.S.C. Section 1983, as there was no Section 1983 violation by the Defendant Deputies, the Plaintiff's Amended Complaint fails to state a cause of action based upon Section 1983 claim against the Sheriff.

11.    The Plaintiff's Amended Complaint fails to state a cause of action based upon an alleged violation of the Americans with Disabilities Act or Section 504 of the Rehabilitation Act by Defendant Deputies.

12.    Plaintiffs' Amended Complaint fails to state a cause of action against the individually named Defendants based upon a claim under State Law for wrongful death.  In addition, the individually named Defendants are immune from liability for any State law claim based upon the provisions of Section 768.28(9), Florida Statute.

13.    Plaintiffs' Amended Complaint fails to state a cause of action against the Sheriff, based upon any State Law claims.  In addition, to the extent, if any, that the Plaintiffs' Amended Complaint attempts to assert a claim based upon *respondeat superior* for the alleged intentional torts of individually named Defendants, the Sheriff is immune from liability based upon the provisions of Section 768.28(9), Florida Statutes.

14.   As to any State law claims, the Sheriff, is immune from liability based upon the doctrine of sovereign immunity.

WHEREFORE, the Defendant Sheriff Morgan, in his official capacity as Sheriff of Escambia County, Florida, and Defendants, Holloway, Weller, McCracken, Lavoie and Barnes, in their individual capacities, request that this Court grant their Motion to Dismiss Plaintiffs' Amended Complaint.

## MEMORANDUM OF LAW

## I.    Standard of Review of Rule 12(b)(6) Motion

In ruling on a Rule 12(b)(6) motion, Fed.R.Civ.P., the Court must accept all factual allegations as true and construe them in a light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir.2003).   Pursuant to Rule 8(a)(2), F.R.C.P., a Complaint must articulate "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662 (2009). While detailed factual allegations are not required, the pleader must do more than merely invoke labels, conclusions, and the formulaic elements of a cause of action.  Id. at 1949 (citing Twombly, 550 U.S. at 555).

"When considering a Motion to Dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleading and exhibits attached thereto.'" GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir.1993). A Complaint may not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir.1997); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231-32 (11th Cir.2000).

## II.  Documents referenced in Plaintiffs' Amended Complaint

Plaintiffs have referenced several documents, and or supplemental material in their Amended Complaint.  Specifically, Plaintiffs mention 911 calls placed by the decedent in paragraphs ¶28-¶37, call notes from dispatch in paragraph ¶40, the autopsy of the decedent in paragraphs ¶54, ¶66- ¶67 and the Florida Department of Law Enforcement Report[1] and Escambia Sheriff's Office Reports, including forensics, photographs, and statements in paragraphs ¶39-¶43, ¶47-¶52, ¶ 55-¶63, ¶65, ¶68-¶75.

---

[1] While Plaintiffs do not specifically refer to these statements as statements taken from the FDLE report in their Amended Complaint, but rather refers to them generically as "statements," in Plaintiffs' Complaint [ECF. No. 1], Plaintiffs made it clear these were statements from the FDLE report.  While this is Plaintiffs' Amended Complaint, "the prior statement 'ceases to be a conclusive judicial admission,' but still remains competent, though controvertible, evidence." Thyssen Elevator Co. v. Drayton-Bryan Co., 106 F. Supp.2d 1355, 1361 n. 9 (S.D.Ga.2000) (quoting United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir.1991)).

At the 12(b)(6) stage, while the Court primarily examines the allegations of a complaint, it is not always limited to its four corners. Halmos v. Bombardier Aerospace Corp., 404 Fed. Appx. 376, 377 (11th Cir. 2010), citing Long v. Slaton, 508 F.3d 576, 578 n. 3 (11th Cir. 2007). "[A] district court may take judicial notice of matters of public record without converting a Rule 12(b) (6) motion into a Rule 56 motion." Halmos at 377, citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir.) See also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) ('courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, **in particular documents incorporated into the complaint by reference,** and matters of which a court may take judicial notice.')" Id. 377. See also, Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006) (Emphasis added).

A court may consider attachments in ruling on dismissal motions. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). If an inconsistency exists between the attachments and the pleaded allegations, the attachment will control. See Camparelli v. Republica Bolivariana De Venezuela, 891 F.3d 1311, 1316 n.1 (11th Cir. 2018) citing Friedman v. Market St. Mortg. Corp., 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) ("Where

there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.") (quoting <u>Tucker v. Nat'l Linen Serv. Corp.,</u> 200 F.2d 858, 865 (5th Cir. 1953). Where an attachment reveals a "built in" defense that bars recovery as a matter of law, the court may grant a dismissal. See <u>Hamilton v. O'Leary,</u> 976 F.2d 341, 343 (7th Cir. 1992).

In the present case, Plaintiffs have referenced documents in their Amended Complaint: the FDLE report, ECSO report, the 911 calls, and the autopsy, thus, the Court may consider these documents in ruling on this Rule 12(b)(6) Motion to Dismiss on behalf of the Defendants.

## III.   <u>Defendants Holloway, Weller, McCracken, Lavoie, and Barnes are entitled to Qualified Immunity</u>

The individually named Defendants are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Gregory v. Miami-Dade County, Florida</u>, 719 Fed. Appx. 859, 866 (11th Cir.2017) (quoting <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1205 (11th Cir.2009)).  In order to be entitled to qualified immunity, an officer must demonstrate that he was acting within this discretionary duty at the time the alleged wrongful acts occurred. <u>Durruthy v. Pastor</u>, 351 F.3d

1080, 1087 (11th Cir.2003) (citing <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir.2002)).

Plaintiffs' Amended Complaint alleges in paragraphs 13 through 17 that each of the individually named Defendants were acting within the course and scope of their employment. These Defendants were acting within their discretionary duty at the time they were called out to Young's residence in response to his 911 call that he had killed a man and the deceased individual was in his bedroom. Thus, the burden shifts to the Plaintiffs to demonstrate that the individually named Defendants are not entitled to qualified immunity. <u>Lee</u>, 284 F.3d at 1194.

Holloway, Weller, McCracken, Lavoie, and Barnes are entitled to qualified immunity unless Plaintiffs can demonstrate that the facts, viewed in the light most favorable to them, establish a constitutional violation by the officers, and second, that it was clearly established at the time of the incident the actions of the individual named Defendants were unconstitutional. <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). This inquiry is case specific, and not done as a broad general proposition. <u>Lee</u>, 284 F.3d at 1194. Plaintiffs have alleged that Defendants Holloway, Weller, McCracken, and Lavoie violated the Fourth Amendment by using excessive force when they shot Young, and that Defendant Barnes violated the Fourth Amendment by failing

to intervene in Defendants', Holloway, Weller, McCracken, and Lavoie, use of excessive force and that they violated the Fourth Amendment by conspiring to fabricate evidence, specifically that the decedent threw the meat cleaver. [ECF No. 24, ¶55]

### (a) There are no factual allegations stating a claim for conspiracy to fabricate evidence (Count II)

In Count II, Plaintiffs have alleged that all Defendants conspired to fabricate evidence, specifically that the decedent threw the meat cleaver and it struck Deputy Weller.  In support of this allegation, Plaintiffs have made such conclusory statements that Weller's statement was "simply a convoluted and inartful lie," "simply not credible" and that the statements of the deputies were "fictional stor[ies] of events to justify the shooting." [ECF No.24, ¶111, 112] Plaintiffs' also rely on the statement of facts in paragraphs 1-89 in support of Count II, whereby, they claim the throwing of the meat cleaver was a "false justification," and that "there is no physical or scientific explanation for these cuts," and that the story was "fabricated."  However, what Count II, and paragraphs 1-89 are completely devoid of are any factual allegations.  In assessing a complaint under plausibility standard on a motion to dismiss, the court must apply a two-step process, first distinguishing a complaint's factual allegations, which must be accepted as true, from the conclusory legal allegations, which need not be given credit; and second, determining whether

the factual allegations are sufficient to support a reasonable inference that defendant is liable for misconduct alleged.[2]   Fed. R. Civ. P. 12(b)(6), 28 U.S.C.A., see also Garcia-Catalan v. U.S., 734 F.3d 100, 86 Fed.R.Serv.3d 1386 (1st Cir. 2013).  When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, they must be treated as naked conclusions. A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013)

When all of the mere conclusions that the Defendants statements were "simply not credible" or clearly "fabricated" there is nothing, but conclusory statements left, camouflaged as factual allegations, and thus they are not sufficient to meet the plausibility standard and survive a motion to dismiss. Id., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Even Plaintiffs claim that the meat cleaver could not have left the cut on the 1" slice to the cargo pant and then created the 3" inch gouge in the cell phone case is not a factual allegation, but

---

[2] Even where Plaintiffs have submitted a "factual claim" such as in paragraph 66, "Notably, the autopsy identified nearly a dozen bullet entrance wounds to throughout Mr. Young's posterior body - as his body was facing away from Defendants," they are contradicted by the documentary evidence referenced by the Plaintiffs. The Court may review the autopsy results and find that this claim is blatantly contradicted, as there were only six bullet wounds identified as being to the posterior, labeled in the autopsy as wounds 12, 21, 22, 23, 24 and 25 – all to the thigh.  Additionally, Plaintiffs claim in paragraph number 67 that "the autopsy also identified two bullets through Mr. Young's right arm in trajectories inconsistent with Mr. Young raising his right arm above his shoulder, which would have been required to throw a meat cleaver," is also contradicted by the actual autopsy, as wound number 8 was to the medial upper right arm, which would have been consistent with his arm raised in a position to throw a meat cleaver.  [Ex. 1 - YOU1-025352]

rather a conclusory allegation, unsupported by anything but the conclusory allegation this is "physically impossible.[3]"

To state a claim for civil conspiracy under Section 1983, a Plaintiff must allege: (1) a violation of his federal rights under color of law; (2) an "understanding" among the defendants to violate those rights' and (3) a resultant "actionable" harm."  See Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010); Hadley v. Guiterrez, 526 F.3d 1324, 1332 (11th Cir. 2008).  The Plaintiffs must make particularized allegations as to the conspiracy, vague and conclusory allegations suggesting a section 1983 conspiracy are insufficient to survive a motion to dismiss. Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012), Fullman v. Graddick, 739 F.2d 553, 556–57 (11th Cir.1984).  Plaintiffs claim in paragraph 83 that "Defendants jointly agreed and/or conspired with one another to complete false and incomplete official reports and to give a false version of the events to superiors…."  This is again unsupported by any factual statements, but rather just conclusory allegations.  The Plaintiffs must show that the parties "reached an understanding to deny the plaintiff his or her rights." Spadaro, 855 F.Supp. at 1346, quoting Bendiburg v. Dempsey, 909

---

[3] Even this allegation that purports to be factual is not supported by the photographic evidence which demonstrates the gash in Weller's pocket to extend beyond the one-inch slice.  [Ex. 2 - YOU1-025559]

F.2d 463, 468 (11th Cir.1990)).  This conclusory allegation that the Defendants jointly agreed to and/or conspired with one another is contradicted within Plaintiffs' own complaint, in paragraph 57 "Defendant Barnes stated "he 'couldn't see' the meat cleaver being thrown."  Thus, that does not support this conclusory allegation that the deputies all got together and conspired to state the meat cleaver was thrown at Deputy Weller, but rather contradicts that proposition.  Additionally, the Amended Complaint is devoid of any factual allegation that the Sheriff took part in any alleged fabrication or evidence, or that somehow, he would be liable under a municipal liability theory.

In a review of Spadaro, the Court specifically found that the amended complaint included sufficient factual allegations from which the court could conclude a meeting of minds occurred when it was specifically alleged that "all four Defendants met after Fantigrassi administered the polygraph to Caravella…[t]hereafter, Fantigrassi informed Caravella's mother that her son had confessed to murdering Ms. Jankowski and the polygraph indicated that he was being truthful." Spadaro, 855 F.Supp. at 1346.  In Hansel v. All Gone Towing Co., however, the court found that simply alleging that he (Hansel) was "an apparent victim of a 'shakedown' racket… and that Pinellas County 'participated in a civil conspiracy to regularly engage in depriving… truckers of their property, due process of law, and the equal protection of the law,'" was

an insufficient conclusory allegation, with no factual support sufficient to state a claim. Hansel v. All Gone Towing Co., 132 Fed. Appx. 308, 310 (11th Cir. 2005) Our situation is akin to Hansel, as there are no factual allegations of communication to support a conspiracy to fabricate evidence – rather conclusory allegations: "Defendant Weller and all of the Defendants and other officers who conspired with him, purposefully and intentionally fabricated…," "Defendants jointly agreed and/or conspired with one another…," "Defendants fabricated their justification…," and "Defendants and Defendant Barnes endorsed Defendant Weller's fictional story…." [ECF No. 24, ¶78, ¶83, ¶85, ¶112].

In addition to failing to put forth any factual allegations sufficient to state claim for relief, Plaintiffs' claim fails under the intracorporate conspiracy doctrine.  Under the intra-corporate conspiracy doctrine, a legal entity cannot conspire with its own employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.    McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000).    One exception allows proof of conspiracy "in rare instances" where the corporate employees are shown to act for their own personal purposes rather than those of their employer.  See H & B Equip.Co., Inc. v.Int'l Harvester Co., 577 F.2d 239, 244 (5th Cir. 1978).

In <u>Selman v. American Sports Underwriters, Inc.</u>, 697 F.Supp. 225, 239 (W.D. Va. 1988), the District Court stated that the Plaintiff correctly noted an exception to intra-corporate immunity.  The Fourth Circuit found that, pursuant to Virginia law, the doctrine does not apply when an agent of the corporation has an independent personal stake in achieving the corporation's illegal objective.  <u>Buschi v. Kirven</u>, 775 F.2d at 1252, citing <u>Greenville Publishing Co., Inc. v. Daley Reflector, Inc,</u> 496 F.2d 391, 399 (4th Cir. 1974).

In <u>Oksanen v. Page Memorial Hosp.</u>, 945 F.2d 696 (4th Cir. 1991) cert. denied 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 137, the Court further clarified the "personal stake exception" and held that the exception required that there be a personal *financial* stake involved.  This limitation has also been applied in an unpublished opinion where the Court specifically refused to expand the personal stake exception to include bad faith and personal motives.  <u>Locus v. Fayetteville State University</u>, 1989 WL 21442 (4th Cir. 1989).

### (b) There was no excessive use of force by Defendants Holloway, Weller, McCracken, or Lavoie in violation of 42 U.S.C. § 1983 (Counts III, IV, V & VI)

A claim of excessive force is "properly analyzed under the Fourth Amendment's objective reasonableness' standard."  <u>McCullough</u>, 559 F.3d at 1205, citing <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989).  In determining the reasonableness of the force applied, the court must look at the fact pattern

from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances of the facts.  Scott v. Harris, 550 U.S. 372 (2007). It is not the court's position to evaluate what officers could have or should have done in hindsight but whether their actions were reasonable at the moment, under those circumstances.  Garcynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009); Graham, 490 U.S. at 396.

A police officer may use deadly force where the officer: (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the intentional infliction of serious physical harm"; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.  McCullough, 559 F.3d at 1206 (citing Vaughan v. Cox, 434 F.3d 1323, 1329-30 (11th Cir.2003). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018), disapproved of by O'Farrell v. Bd. of Commissioners for County of Bernalillo, CIV 17-1052 JB/JFR, 2020 WL 1955292 (D.N.M. Apr. 23, 2020) (quoting Graham, 490 U.S. at 396-97). The

Supreme Court has said that "if the suspect threatens the officer with a weapon" then it is constitutionally permissible to use deadly force.  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246 (2003) (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)).  Courts have found that use of force by law enforcement officers in response to the presentation of force by a suspect with a knife, a hatchet, and even a walking stick, is objectively reasonable. For example, in Kisela, the Court found there was no way a competent officer would have known that shooting an erratic knife wielding woman who was refusing to drop the knife and appeared to be a threat to a concerned bystander would violate the Fourth Amendment.  138 S.Ct. at 1153.  The Court in McCormick, found that an officer's decision to shoot a man armed with a walking stick was objectively reasonable, given the fact the officer had probable cause to believe that the man earlier had committed a violent felony, posed an imminent threat of violence to the officer and other bystanders, and continued to ignore repeated commands to drop his weapon.  333 F.3rd at 1246. In Shaw v. City of Selma, the court found the officer's use for deadly force reasonable, when the officer was confronted with a man armed with a deadly weapon, a hatchet – who was acting in an "aggressive and unpredictable behavior."  Shaw v. City of Selma, 241 F.Supp.3d 1253, 1271 (S.D. Ala. 2017), aff'd, 884 F.3d 1093 (11th Cir.2018) (quoting Penley v.

Eslinger, 605 F.3d 843, 851 (11th Cir. 2010)). The Court found that it was entirely reasonable under the circumstances for the officer to believe the hatchet wielding man was going to attack him with the hatchet, and thus needed to employ deadly force to protect himself from the attack.  Id. at 1273.

An officer may be justified in the use of deadly force when a suspect is deemed "deranged and defiant" and one whom officers are "unable to subdue or disarm."   Sparkes v. City of Sunrise, 777 Fed. Appx. 446, 450 (11th Cir.2019). Indeed, "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act." Sparks, 777 Fed. Appx. at 450 (citing Long v. Slaton, 508 F.3d 576, 581 (11th Cir. 2007)).

The Amended Complaint alleged that the Deputies conspired to fabricate evidence, i.e., the cut mark on Weller's pants, the cut to the cell phone case, and the red mark to his leg.  While it is the Defendants position no evidence was fabricated, nor "stories" concocted, as Plaintiffs allege through a series of conclusory statements, for purposes of this analysis, Defendants submit that the use of force was justified even in the absence of the decedent throwing the meat cleaver at Deputy Weller.

Plaintiffs have referenced the 911 call, however, did not attach the 911 call, but the Court may consider documents incorporated into the complaint by

refence. <u>Thaeter v. Palm Beach County Sheriff's Office</u>, 449 F.3d 1342, 1352

& n.7 (11th Cir. 2006).  Conspicuously absent from Plaintiffs' description of the

911 call is the fact the decedent stated to the 911 operator that he was going

to kill one of the deputies. [Ex. 3 - YOU1-026009 to YOU1-026021]

> SHERIFF'S 911 OPERATOR: Okay. Do you still have the meat cleaver on you?
> MR. YOUNG: Yes. I do.
> SHERIFF'S 911 OPERATOR: Okay.  I need you to put the meat cleaver down when the deputies get there, okay, John?
> MR. YOUNG: No, because I'm gonna kill one of them, too.
> SHERIFF'S 911 OPERATOR: You're gonna what?
> MR. YOUNG: I'm gonna kill one of them, too.
> [Ex. 3 – YOU1-026016, LINES 7-18]

While Plaintiffs allege this was simply a welfare check for a person

"having a mental health crisis," referencing the call notes from dispatch,

Plaintiffs fail to mention the full extent of the notes from dispatch, that

the Deputies would have had in arriving to the scene that evening. The

call notes detail that the caller stated, "he just murdered someone," that

he is "still armed," "said he will kill a deputy too," and that "he said he

has a gun as well."  [Ex. 4 - YOU1-00005 to YOU1-000009] Thus,

Deputies knew that not only had Young just self-reported committing a

murder and having the deceased victim of this murder in his bedroom,

but that he was armed and intended to kill one of them.

Upon making contact with Young, the individually named Deputies were immediately able to confirm the self-reports by decedent; that is, immediately observe a meat cleaver in his right hand. Plaintiffs have made reference to the FDLE report throughout their Amended Complaint; thus, the Court may consider the FDLE report, which includes DNA analysis of both the meat cleaver and the box cutter collected from the scene, both of which demonstrated a mixture consistent with at least one male contributor, John Young. [Ex. 5 – Excerpts from YOU1-025969 to YOU1-025970 FDLE Investigative Report] These DNA results are conclusive evidence that the decedent was armed, as he stated he would be in the 911 call.

Deputies gave commands for decedent to drop the meat cleaver, and he did not comply. This is supported not only by the Deputies, but additional statements contained in the FDLE report. [See Ex. 6 - YOU1-000023-YOU1-000033 FDLE Investigative Summary], In Plaintiffs' Amended Complaint, they rely on this FDLE report in paragraph 61, stating: "[s]urrounding neighbors only heard 20-30-gun shots and did not hear directives regarding any weapons." [ECF No.24, ¶:61] However, as Plaintiffs are referencing statements of neighbors from the FDLE report[4],

---

[4] See Ex. 5 – Excerpts from FDLE Investigative Report

the Court may consider the other statements of neighbors contained in the FDLE report, because while some neighbors reported only hearing gunshots, there was a neighbor who heard directives to the decedent to "get down and drop it," just prior to hearing "what sounded like gun shots," and then a large number of shots.  [Ex. 5 - YOU1-025284-YOU1-025285]

Additionally, contained in the FDLE report that Plaintiffs have referenced, are the statements of three additional deputies, not named in the Amended Complaint who were all present and witnessed the events transpire through different vantage points.  Deputy Nichols of ECSO was present, and he was able to hear Holloway give the decedent commands to drop the meat cleaver.  He was also able to hear the beanbag being deployed, and then a taser being deployed.  Deputy Nichols then heard shots fired.  Thus, Deputy Nichols statement to FDLE, which may be considered by this Court, supports that the decedent was armed, and presented a danger to the Deputies.  [Ex. 5 - YOU1-025281 to YOU1-025282] Sgt. Scruggs of ECSO was also present, and she was able to see the decedent armed with the meat cleaver in his right hand and an unidentified object in his left hand.  She stated that the decedent was moving back and forth, which prevented

her from getting a complete view of his person.  She was able to hear Holloway's verbal commands to drop the meat cleaver, and the decedent's response – "No!"  Additionally, she was able to observe the use of the beanbag shotgun on the decedent, along with the taser.  She did not see the meat cleaver being thrown but did hear it hitting the ground.  It was at this point she observed the deputies discharging their firearms.  Thus, like Deputy Nichols' statement, the Court may consider this statement, as it supports the decedent being armed and a danger to the Deputies.  [Ex. 5 - YOU1-025288 to YOU1-025289] Deputy Fetterhoff, of ECSO, was also present and was able to observe Plaintiff armed with a meat cleaver in his right hand, and with an object in his left hand.  Fetterhoff was later able to recognize the object to be a box cutter. He was able to hear directives for the decedent to drop the weapons. He observed the decedent being struck with a beanbag shotgun, and then a taser.  He then observed the decedent raise the meat cleaver and throw it at the deputies, at which time they opened fire. [Ex. 5 - YOU1-025290 to YOU1-025292]

Thus, while Plaintiffs dispute if the meat cleaver was thrown, contending that it was not, there is no dispute that the decedent was in fact armed with a meat cleaver and a box cutter.  There is no dispute

that he informed the 911 operator he had just killed someone and that he intended to kill someone else, in fact, he intended to kill a deputy. Thus, even without the additional fact the decedent threw the meat cleaver, under the totality of the circumstances, he presented an imminent threat to the Deputies' safety. Whether decedent actually had a dead body in his bedroom, or whether he threw the meat cleaver, or caused a significant injury is of no relevance to the analysis – "if a reasonable officer could have believed under the circumstances that [plaintiff] 'posed a threat of inflicting serious injury or death' to [the officers] then 'the shooting was objectively reasonable regardless of whether [plaintiff] had already committed a crime or was resisting or attempting to evade arrest.'" Wilson v. Parker, 746 Fed. Appx. 860, 863 (11th Cir.2018) (quoting Shaw, 884 F.3d at 1099 n.5). It is certainly reasonable that the Deputies believed decedent "posed a threat of inflicting serious injury or death" to the officers through his statements to the 911 operator, his answering the door armed, and his refusal to drop the weapons.   Plaintiffs have failed to plead facts that establish the Defendants committed a constitutional violation and Defendants Holloway, Weller, McCracken, and Lavoie are entitled to qualified immunity.

### (c) There was no violation of a clearly established law

While there was no constitutional violation, thus ending the analysis, for purposes of this motion, the individually named Defendants submit the following: even if this court determines a constitutional violation has been sufficiently plead by Plaintiffs, the Plaintiffs failed to meet their burden of demonstrating that the Deputies violated a right that was clearly established on the date in question.  "[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood what he is doing violates the right." Gregory, 719 Fed. Appx. at 868 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). Thus, the unlawfulness of the conduct must be apparent from pre-existing law.  Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir.2011) (en banc).

There are three ways in which Plaintiffs may show that the constitutional right is clearly established: "First, the [plaintiff] may show that a materially similar case has already been decided.  Second, the [plaintiff] can point to broader, clearly established principle that should control the novel facts of the situation.  Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir.2012).

In the present case, and under the very fact-specific scenario which Plaintiffs outline in their Amended Complaint, the law as of December 1, 2018, i.e., the date of this incident, was not clearly established to put the individually named Deputies on notice that their conduct was clearly unlawful under the circumstances presented here, and Plaintiffs cannot allege sufficient facts to indicate otherwise.  See Sparkes v. City of Sunrise, 777 Fed. Appx. 446 (11th Cir. 2019). Accordingly, Defendants Holloway, Weller, McCracken, or Lavoie are entitled to qualified immunity and any and all Federal claims against them should be dismissed.

### (d) As there was no use of excessive force, there was no failure to intervene by Defendant Barnes (Count VII)

Officers can be held liable under 42 U.S.C. §1983 for failing to intervene when a fellow officer uses excessive force if he or she "is present at the scene" and "fails to take reasonable steps to protect the victim."  Skritch v. Thornton, 280 F.3d 1295, 1302 (11th Cir.2002) (citing Fundiler v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir.1985)). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir.2000) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir.1998)).

In Count VII, Plaintiffs allege that Defendant Barnes had a duty to intervene to prevent or stop the unconstitutional use of deadly and excessive

force against decedent.   Because the force used in this case was not excessive, Defendant Barnes had no constitutional obligation to intervene. See <u>Bash v. Patrick</u>, 608 F.Supp. 2d 1285, 1297, n. 7 (M.D. Ala. 2009) (derivative theory of failure to protect "cannot support liability when there was no underlying use of excessive force.") (citing <u>Fundiller</u>, 777 F.2d at 1441-42).

## III.   <u>As there was no §1983 violation by Defendant Deputies, the §1983 claim against the Sheriff must fail as a matter of law.  (Count I)</u>

A suit against a sheriff in his official capacity is functionally a suit against the sheriff's office he represents.   <u>Pellegrino v. Wengert</u>, 703 Fed. Appx. 892, 894 n.1 (11th Cir.2017). The sheriff's office constitutes a municipal body which "cannot be held liable for the actions of its employees under § 1983 based on a theory of *respondeat superior.*" <u>Id</u>. at 895 (quoting <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1307 (11th Cir.2001). A sheriff's office may only be held liable for its customs which are "so widespread as to have the force of law" and office policies. <u>Id</u>.

There must be "a direct causal link between the municipal action and the deprivation of federal rights." <u>Bd. of Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997). If the policy is facially lawful, the plaintiff then must demonstrate deliberate indifference to the policy's consequences. <u>Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami</u>, 637 F.3d 1178, 1187-88 (11th Cir.2011). To prove deliberate indifference, a plaintiff must show that

policymakers acted (or failed to act) while on notice of the consequences.  Id. This ordinarily requires the plaintiff to point to a pattern of similar constitutional violations unless constitutional violations were the obvious consequence of the action (or inaction).  Id.  Absent an underlying constitutional violation, a §1983 claim against the Defendant Sheriff must fail. Furtado v. Yun Chung Law, 51 So.3d 1269, 1275 (Fla. 4th DCA 2011) (citing Garczynski v. Bradshaw, 573 F.3d 1158, 1171 (11th Cir.2009)); see also, Sparkes, 777 Fed. Appx. at 450 ("Only when it is clear that a violation of specific rights has offered can the question of §1983 municipal liability for the injury arise.") (citing Vineyard v. Cty. of Murray, Ga., 990 F.2d 1207, 1211 (11th Cir.1993). Therefore, as there were no underlying constitutional violations by the individually named Deputies, as outlined in previous sections, Plaintiffs' §1983 claim against the Sheriff fails.

## IV. There were no violation of the American with Disabilities Act or Section 504 of the Rehabilitation Act by Defendant Deputies, therefore, the claims against the Sheriff must fail as a matter of law (Counts VIII and IX)

Count VIII alleges that the Sheriff failed to provide policies, procedures, or training to ECSO officers regarding their obligations under the ADA, thus, the individually named Deputies violated decedent's rights under the ADA by not making a reasonable accommodation for his mental disability and mental health crisis. Count IX further alleges that the individually named Deputies

failed to accommodate decedent's disability intentionally and/or with a deliberate indifference to his rights under Section 504 of the Rehabilitation Act of 1973[5] (hereinafter, "RA"), and, as such, the Sheriff is liable in his official capacity.

Plaintiffs have alleged decedent's disability to be that of schizophrenia. [ECF No.24 at ¶158] For purposes of this motion, even assuming decedent was entitled to the protections afforded under the ADA, Plaintiffs claim still fails as a matter of law under Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir.2007) (citing 42 U.S.C. §12132), as exigent circumstances made any further accommodation, beyond Holloway's attempt to de-escalate the situation by calling decedent and asking him to drop the weapons, unreasonable.  As the decedent opened the door armed with a meat cleaver and a box cutter, after having told the 911 operator he intended to kill one of the deputies, and then refused to drop the weapons, officer safety trumped any duty to further accommodate his disability. See Vila v. Miami-Dade Cty., 65 F.Supp. 3d 1371, 1384 (S.D. Fla. 2014), thus Plaintiffs claims in Counts VIII and IX should be dismissed as a matter of law.

---

[5] "Discrimination claims under the Rehabilitation Act are government by the same standards used in ADA cases," Shotz v. Cates, 256 F.3d 1077, 1305 (11th Cir.2001).

## V.   Defendants are not liable for wrongful death

### (a) Defendants: Holloway, Weller, McCracken, and Lavoie (Counts XIII, XIV, XV and XVI)

Plaintiffs bring a wrongful death claim against Defendants Holloway, Weller, McCracken, and Lavoie in their individual capacities, under Florida law. Each claim is due to be dismissed for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. In the state of Florida, the right of action for wrongful death exists "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person … and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued …." Fla. Stat. § 768.19. The Estate claims, in essence, that the cause of the wrongful death was the officers' negligent use of excessive force.

No cause of action for the negligent use of force exists under Florida law. Lewis v. City of West Palm Beach, 561 F.3d 1288, 1294 (11th Cir.2009) (finding that the plaintiff failed to state a claim for wrongful death because "it is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force.") (citing City of Miami v. Ross, 695 So.2d 486, 487 (Fla. 3d DCA 1997)). A plaintiff's allegations for excessive force must first overcome the presumption of good faith afforded to an officer's use of force, such that an officer is only liable for damages if the force used is found to be

clearly excessive. <u>City of Miami v. Sanders</u>, 672 So.2d 46, 47 (Fla. 3d DCA 1996). Excessive force claims by their very nature require intentional conduct, and thus lie, if at all, in the realm of battery. <u>Id</u>. at 48. Further, based on the allegations, there is no "negligence component" of any of the deputies conduct that "pertain to something other than the actual application of force …" <u>Id</u>. In order to state a viable claim, the alleged negligent act "must pertain to something other than the actual application of force during the course of arrest." <u>Secondo v. Campbell</u>, 327 F. App'x 126, 131 (11th Cir.2009) (internal quotation marks omitted).

Each count of wrongful death brought by Plaintiffs against Holloway, Weller, McCracken, and Lavoie, all are presented in terms of negligence, rather than the intentional tort of excessive force. As to Holloway, Weller, McCracken, and Lavoie, Plaintiffs state that, while each officer committed a "harmful and/or offensive touching" this alleged behavior was "in violation of his duty of care." An allegation of common law negligence has four elements: (1) a legal duty owed by defendant to plaintiff, (2) breach of that duty to defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of the injury. <u>Paterson v. Deeb</u>, 472 So.2d 1210, 1214 (Fla. 1st DCA 1985). Plaintiffs allege within Counts XIII, XIV, XV and XVI, that Deputies Holloway, Weller, McCracken, and Lavoie had a "duty of care" to the

decedent and that they "violat[ed]" or *breached*, that duty of care, which caused an injury to the decedent, that being the wrongful death, and that damages resulted. As such, the Plaintiffs have alleged a negligent commission of an intentional tort, which is not a viable claim. The Amended Complaint fails to allege facts that would cause this Court to evaluate these wrongful death claims in any light other than negligence. As such, Plaintiffs have failed to state a claim for wrongful death in Counts XIII, XIV, XV and XVI must fail as a matter of law and are due to be dismissed with prejudice.

### (b) Defendant: Barnes (Count XII)

In Count XII, Plaintiffs attempt to allege a wrongful death claim against Barnes, stating that he had a "duty to supervise, intervene, and prevent" the death of Young, and that he "failed … to prevent the wrongful conduct" The wrongful conduct that Plaintiffs base all of their wrongful death claims on are that of excessive force, or stated another way, the intentional tort of battery. To the extent that the Plaintiffs allege that Barnes had a duty to prevent the excessive force used against Young, and that he breached that duty through a lack of supervision and/or intervention, and that the lack of supervision and/or intervention then caused Young injury that resulted in damages, such a claim fails, as there is "no such thing as the negligent commission of an intentional tort." Sanders, 672 So.2d 46, 48 (1996). Plaintiffs' allegations point

directly at the actual application of force applied toward decedent. Here, the negligence component of the wrongful death claim against Barnes is the actual application of force during the course of the arrest. As such, Plaintiffs' wrongful death claim against Barnes is due to be dismissed with prejudice.

The Amended Complaint does not set forth a basis for individual liability against the individually named Defendants regarding the decedent as being willful, wanton, or malicious or made in bad faith, in order to impose liability against them pursuant to Fla. Stat. Ann. Section 768.28(9) (a).  As stated in Richardson v. City of Pompano Beach, 511 So. 2d 1121 (Fla. Dist. Ct. App. 1987), "willful and wanton in the statute connotes conduct much more reprehensible and unacceptable than mere intentional conduct."

### (c) Defendant: Sheriff (Count X and XI)

In Count X, Plaintiffs attempt to allege a claim for wrongful death against the Sheriff, based upon *respondeat superior*. It is well established that under the doctrine of *respondeat superior*, an employer may be liable in damages for the negligence of an employee which results in injuries to, or death of, another, if the wrongful act transpired while the employee was acting within the course of his employment. See. e.g., Int'l Shoe Co. v. Hewitt, 167 So. 7, 10 (Fla.1936), overruled in part by Sinclair Ref. Co. v. Butler, 190 So.2d 313 (Fla.1965).

To the extent that the Amended Complaint seeks to allege that the Sheriff is liable for the actions of his deputies, because he breached his duty of care, such claim is due to be dismissed for the reasons addressed above. [ECF No. 24 ¶186] Plaintiffs seek to implicate the Sheriff based upon the deputies' negligent commission of an intentional tort against Young, of which there is no legal basis for. See Lewis v. City of West Palm Beach, 561 F.3d 1288, 1294 (11th Cir.2009).

Within this Count, the Plaintiffs allege the Sheriff: "failed to adequately provide policies, procedures, or training to his officers … in the use of force and the use of firearms…" and "…in the use of force applications…", because the Sheriff "had an obligation to properly screen, train, supervise, control discipline, and retain his employees." [ECF No. 24 ¶¶186a, 186b,188] Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents. Dep't of Entvl. Prot. v. Hardy, 907 So.2d 655 (Fla. 5th DCA 2005). The State of Florida and its subsidiaries are generally immune form tort liability. See Fla. Const. art. X § 13. Although the State has waived governmental immunity for its subsidiaries under certain circumstances, the waiver does not apply if the challenged act is "discretionary" rather than an "operational" act. Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir.2001).

Plaintiffs' allegations within the remainder of Count X are overbroad and are not directly related to those discretionary, planning level functions for which the Sheriff enjoys sovereign immunity. See Kaisner v. Kolb, 543 So.2d 732, 736 (Fla.1989). Plaintiffs allege that the Sheriff's failure to create certain polices and procedures on the use of force and interactions with individuals experiencing mental health issues (ECF No. 24 ¶¶186(b) and (e)), failure to monitor and evaluate performance (ECF No. 24 ¶186(c)), and failure to screen, train, supervise, control, discipline, and retain his employees (ECF No. 24 ¶188) amounts to liability. However, Plaintiffs cannot sustain such claims against the Sheriff because the above allegations amount to nothing more than discretionary functions. Planning level functions require basic policy decisions. Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010, 1021 (Fla.1979). The Supreme Court of Florida has specifically recognized a test for determining whether something is a discretionary in Kaisner v. Kolb, 543 So. 2d 732, 736 (Fla. 1989).  For the foregoing reasons, the claims brought in Counts X and XI of the Amended Complaint against the Sheriff are barred by the doctrine of sovereign immunity.

## RULE 7.1(F) CERTIFICATE

I HEREBY CERTIFY that there are 7,907 words in this motion and memorandum pursuant to Local Rule 7.1(F).

DATED this 28th day of December 2020.

WARNER LAW FIRM, P. A.

*/s/ Jennifer Hawkins*
JENNIFER HAWKINS
Florida Bar No. 0017694
TIMOTHY M. WARNER
Florida Bar No. 0642363
ALICIA D. CAROTHERS
Florida Bar No. 0099339
501 West 11th Street, Suite A
Post Office Box 1820 (32402)
Panama City, Florida 32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via CM/ECF

this 28th day of December 2020, which will send notice to all Counsel of record.

*/s/ Jennifer Hawkins*
JENNIFER HAWKINS
Florida Bar No. 0017694